No. 22-4087

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

## Kane County, Utah
*Plaintiff-Appellee*

## The State of Utah
*Plaintiff-Intervenor-Appellee*

v.

## The United States of America
*Defendants-Appellees*

## Southern Utah Wilderness Alliance *et al.*
*Defendants-Intervenors-Appellants*

On Interlocutory Appeal from the
United States District Court, District of Utah
No. 2:10-cv-1073-CW

# Motion to Stay District Court Proceedings
# Pending Interlocutory Appeal

| **SOUTHERN UTAH WILDERNESS ALLIANCE** | **MANNING CURTIS BRADSHAW & BEDNAR PLLC** | **COOLEY LLP** |
|---|---|---|
| Stephen H.M. Bloch | Trevor J. Lee | John C. Dwyer |
| Michelle White | Mitch M. Longson | Tijana Brien |
| 425 East 100 South | 136 East South Temple, Suite 1300 | 3175 Hanover Street |
| Salt Lake City, UT 84111 | Salt Lake City, UT 84111 | Palo Alto, CA 94304 |
| Telephone: (801) 486-3161 | Telephone: (801) 363-5678 | Telephone: (650) 843-5000 |
| Facsimile: (801) 486-4233 | Facsimile: (801) 364-5678 | Facsimile: (650) 849-7400 |
| | | |
| | | Lauren Pomeroy |
| | | 3 Embarcadero Ctr, 20th Fl |
| | | San Francisco, CA 94111 |
| | | Telephone: (415) 693-2000 |
| | | Facsimile: (415) 693-2222 |

*Attorneys for Southern Utah Wilderness Alliance et al.*

## TABLE OF CONTENTS

Introduction ..................................................................... 1

Background ..................................................................... 5

Argument ..................................................................... 16

   I.    SUWA is likely to succeed on interlocutory appeal. ............ 17

   II.   SUWA will face irreparable harm absent a stay. ................ 21

   III.  Plaintiffs and the United States will not be  harmed by a
        stay. ..................................................................... 24

   IV.  A stay is in the public interest. ........................................... 26

Conclusion..................................................................... 27

## TABLE OF AUTHORITIES

Cases

*Abbott Lab'ys v. Diamedix Corp.*, No. 94-1345, 1994 WL 782247
   (Fed. Cir. 1994) .................................................................. 25

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
   356 F.3d 1256 (10th Cir. 2004)................................... 5, 23

*Homans v. City of Albuquerque*, 264 F.3d 1240
   (10th Cir. 2001) ................................................................ 17

*Kane Cnty. (2) v. United States*, No. 2:10-CV-1073,
   2022 WL 2669931 (D. Utah July 11, 2022) ................. 13

*Kane Cnty. (2) (3) (4) v. United States*, No. 1:12-CV-105,
   2022 WL 1978748 (D. Utah June 6, 2022) ...........................passim

*Kane Cnty. v. United States*, 333 F.R.D. 225
   (D. Utah 2019) ................................................... 2, 10, 11

*Kane Cnty. v. United States*, 928 F.3d 877
   (10th Cir. 2019)......................................................passim

Statutes

28 U.S.C. § 1292(b) ............................................................ 17
28 U.S.C. §§ 2409a and 1331........................................... 17
43 U.S.C. § 932 (1866) ........................................................ 5
43 U.S.C. § 1769.................................................................. 6

Rules

10th Cir. R. 35.6.................................................................. 2
Federal Rule of Appellate Procedure 8(a)(2)................... 16

Other Authorities

Federal Land Policy and Management Act, Pub. L. No. 94-579,
   § 706(a), 90 Stat. 2743, 2793 (1976) ............................. 6

## INTRODUCTION

SUWA respectfully seeks expedited consideration of this Motion to Stay in light of an upcoming **October 13** hearing in the district court on dispositive motions.

This case stems from a decade-plus effort by the State of Utah and its Counties to obtain title to and expand traffic on various routes through federal land in Utah, including presently closed paths traveling through unspoiled wilderness. The Southern Utah Wilderness Alliance *et al.* ("SUWA") has an interest in keeping these wilderness lands free of vehicular traffic and preserving them in their natural condition. As such, in 2019 this Court issued its "*Kane I Intervention*"[1] decision and ruled that SUWA was entitled to intervene as of right in a related roads case, as the existing defendant—the United States—might not adequately represent SUWA's narrow interests in light of its own obligations to represent a broader range of competing interests.

Following *Kane I Intervention* SUWA moved the district court

---

[1] *Kane Cnty. v. United States*, 928 F.3d 877 (10th Cir. 2019) (hereinafter "*Kane I Intervention*").

1

to implement that ruling in this case ("*Kane II*"), which involves the same claims, the same legal issues, the same parties, and the same county (but different claimed rights-of-way), and grant SUWA intervention as of right. The district court denied SUWA's motion, rejecting almost every legal and factual conclusion of the *Kane I Intervention* decision, and suggesting (incorrectly) that the decision did not "govern[] th[e district] court" because at that time the mandate had not yet issued (on account of then-pending en banc petitions).[2] And though SUWA previously had some limited rights as a permissive intervenor, following this Court's decision in *Kane I Intervention* the district court removed even those limited rights, issuing a lengthy order berating SUWA and its attorneys, and opining that "[t]he course needs to be corrected."[3]

When the mandate issued, SUWA promptly filed a renewed motion to intervene in *Kane II* for the district court to implement *Kane I Intervention* and grant SUWA intervention. The district court let that motion sit undecided on its docket for *two more years*. When

---

[2] *Kane Cnty. v. United States*, 333 F.R.D. 225, 243-44 (D. Utah 2019); *see* 10th Cir. R. 35.6.
[3] *Kane Cnty.*, 333 F.R.D. at 245.

the district court finally did rule on SUWA's request to implement *Kane I Intervention—three years* after this Court issued the decision—the district court again rejected this Court's legal conclusions (this time without the procedural mandate justification), affirming that SUWA was not entitled to participate in this case. Critically, in the intervening three years following this Court's *Kane I Intervention* decision, the district court in *Kane II* had already proceeded to pre-trial briefing, a three-week trial, and post-trial briefing, all without affording SUWA any meaningful participation, much less intervention as of right. The district court certified its decision for interlocutory appeal but declined to permit SUWA (who has been barred from even filing motions) to file a motion to stay, and instead sua sponte issued an order denying a stay.

SUWA is thus now back before this Court, asking that it make clear that its legal conclusions from *Kane I Intervention* apply to SUWA's intervention in this case, and that it instruct the district court that the decision is, in fact, binding on the lower courts.

Meanwhile, however, the district court intends to continue with argument and issue a decision in this this case (without

3

SUWA's involvement). Most pressing, **on October 13 at 10:00am**[4] the court intends to hear argument on dispositive jurisdictional and statute of limitations grounds raised by the United States (SUWA was not permitted to file a dispositive motion, nor is it allowed to participate in the upcoming hearing). And following that hearing, the court intends to hold a post-trial hearing to decide the merits of Plaintiffs' claims (SUWA was not permitted to participate in the trial, file post-trial briefs, or participate in that upcoming hearing).[5]

The district court has already caused massive prejudice to SUWA by deciding to proceed with three years of litigation, including a three-week trial, without SUWA's involvement, in contravention of this Court's ruling that "SUWA is entitled to intervene as of right"[6] in these R.S. 2477 cases—a choice the district court conceded could result in "the trial . . . need[ing] to be redone."[7] The district court should not be permitted to compound this prejudice by proceeding to

---

[4] Notice of Hr'g, ECF No. 729.

[5] The district court intends to rule on the merits of each right-of-way claim, regardless of whether the court has jurisdiction. App. 178-79.

[6] *Kane I Intervention*, 928 F.3d at 890.

[7] App. 26-27.

4

close out the case while this Court simultaneously addresses (again) whether the district court erred by removing SUWA from it. Indeed, this Court has made clear that a party appealing an intervention denial should "move before this court for a stay" to "preserve the status quo pending appeal" and "protect its position as an alleged interested party."[8] This Court should preserve what remains of the status quo, preempt additional prejudice from the district court's refusal to apply Circuit authority, and stay proceedings under Rule 8 pending appeal.

## BACKGROUND

### *R.S. 2477*

This case is one of over twenty similar cases pending in the District of Utah wherein the State and Counties are attempting to quiet title to rights-of-way over vast swaths of federal land. The statute underlying these efforts is Revised Statute ("R.S.") 2477, a civil war era statute that encouraged construction of highways over certain public lands.[9]

---

[8] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1267 (10th Cir. 2004).

[9] 43 U.S.C. § 932 (1866).

5

While federal policy in the 1800s involved encouraging development of land, in the 1970s that policy shifted to prioritizing retention of the federal estate. In 1976 Congress repealed R.S. 2477.[10] But it made clear that R.S. 2477 rights established before its repeal would remain valid.[11] To obtain a recognized right-of-way over alleged R.S. 2477 routes (at least in Utah), a plaintiff must bring a quiet title action and prove various elements, including ten years of continuous public use before 1976. A plaintiff must also establish the scope of any right-of-way based on pre-1976 width and usage.

### R.S. 2477's Threat to SUWA's Interest

Thirty-five years after the statute was repealed, Utah and various counties in Utah began filing a raft of lawsuits to quiet title to alleged R.S. 2477 rights-of-way, relying primarily on the testimony of now-elderly witnesses to attempt to establish that certain routes had been constructed and used for various purposes before October 1976 (and the scope of those routes).

---

[10] R.S. 2477 was repealed by the Federal Land Policy and Management Act, subject to valid existing rights. *See* FLPMA, Pub. L. No. 94-579, § 706(a), 90 Stat. 2743, 2793 (1976) (repealing R.S. 2477).

[11] *See* 43 U.S.C. § 1769.

6

At the outset, SUWA moved to intervene as a defendant in these lawsuits. Many of the "highways" to which the State and Counties were claiming rights-of-way are in reality barely visible paths traversing pristine and wild landscapes, some of which had been closed by the United States to vehicular traffic in light of the wilderness-quality land and other sensitive resources through which they ran. A primary goal of Plaintiffs is to obtain title to these paths to open them to increased vehicular traffic and to improve them into full-fledged roads (including, in some instances, paving them).

The primary mission of SUWA and its members, by contrast, is preserving and protecting the remote and unspoiled nature of the federal lands through which these alleged routes run, including keeping many of these routes closed to motor vehicles. Therefore, SUWA sought intervention in these cases to protect its unique interests.

### Efforts by the District Judge to Limit SUWA's Participation

From the beginning, the district court judge assigned to all pending R.S. 2477 cases in the district of Utah expressed hostility to SUWA's intervention, relegating SUWA to permissive-intervenor

7

status with significant restrictions.[12] SUWA respected these re-
strictions and attempted to work within them to defend its interests.
But in the ensuing decade it became apparent that the United
States, in light of its obligation to represent a wide variety of inter-
ests, could not adequately represent SUWA's interests. Nor could
SUWA adequately defend its interests under the stringent limita-
tions imposed by the district court. The district court nonetheless
continued to deny SUWA intervention as-of-right.

In 2019 this Court issued its *Kane I Intervention* decision, in
which it ruled that SUWA had met this Circuit's low bar for inter-
vention as of right as to scope of R.S. 2477 rights-of-way. Specifically,
the Court concluded it was "indisputabl[e]" that SUWA had a legally
protectable interest in the remote lands of Southern Utah that may
be impacted by Plaintiffs' demand to reopen and/or improve these
routes, and that the United States, given the "broad-ranging and
competing interests" it was obligated to represent, may not ade-
quately represent SUWA's narrow interest, at least as it pertains to

---

[12] All of the pending R.S. 2477 cases in the district of Utah were
consolidated before one judge for pre-trial purposes.

8

the scope of these routes.[13] The Court reversed the district court, and instructed that "SUWA is entitled to intervene as of right."[14]

Following that decision, SUWA promptly asked the district court to implement that decision in this case ("*Kane II*"). Among the dozens of R.S. 2477 cases pending in the District of Utah, *Kane II* is unique; it is a bellwether case, in which 15 routes have been chosen for discovery and trial, with the goal that resolution of these routes may inform resolution of the remaining thousands of claims.[15] Thus, this Court's conclusion in *Kane I Intervention* that SUWA's interests may be impaired and not adequately represented were especially important to this case.

When SUWA asked the district court to implement *Kane I Intervention* in this case, en banc petitions were pending in the that appeal. Nonetheless, all parties agreed (in light of *Kane I Intervention*) that SUWA should "fully participate as an intervenor [at the

---

[13] *Kane I Intervention*, 928 F.3d at 890–97.

[14] *Id.* at 890.

[15] *See* App. 1-9. Subsequently, the cases were assigned to Judge Waddoups, rather than a special master. *Id.* at 10-12.

upcoming *Kane II* ] trial."[16] But rather than follow this Court's direction in *Kane I Intervention*, the district court denied SUWA's motion for intervention. The court suggested (despite this Court's decision to the contrary) that SUWA did not have standing, that it was not sufficiently "interested" in the case, and held that the United States adequately represented any limited interests SUWA might have.[17] To be sure, the district court acknowledged *Kane I Intervention*, and it acknowledged it was ruling contrary to that decision. But it concluded that it was not obligated to abide by this Court's published decision until the mandate issued (which was delayed on account of the en banc petitions).

Moreover, notwithstanding the agreement of all parties to the case that SUWA should participate in the upcoming trial, the district court proceeded to effectively remove SUWA from all pending R.S. 2477 cases (save for the *Kane I* case that generated *Kane I Intervention*). Indeed, the district court sua sponte imposed new and additional restrictions, making clear that going forward SUWA

---

[16] *Id.* at 13-14.
[17] *Kane Cnty.*, 333 F.R.D. at 234–38, 245.

would have little more than "the same . . . right . . . afforded to any member of the public."[18] The district court openly acknowledged that "there is some risk" that if it rejected this Court's decision and removed SUWA from the case, "that the Tenth Circuit will reverse and find I am in error" and that "the trial would need to be redone"—a risk, according to the court, that "is borne more by the parties than it is by the court."[19] Notwithstanding that risk, and the massive inefficiency that could result from proceeding to trial in contravention of this Court's decision, the district court went forward, without SUWA.

Following that decision, with the trial fast approaching and no other avenue to attempt to protect its interests and give force to *Kane I Intervention*, SUWA filed a petition for mandamus, asking this Court to order the district court to abide by *Kane I Intervention*.[20] Additionally, given the open hostility and bias the district

---

[18] App. 16-17.

[19] *Id.* at 26-27.

[20] *See id.* at 42-43.

11

court judge had expressed toward SUWA over the prior years (including sua sponte rejecting binding circuit authority and an agreement of all parties), SUWA asked that this Court reassign the suite of R.S. 2477 cases to a different judge.[21] In ruling on the petition, this Court noted that the district court may have "erred as a matter of law in holding that the district court is not bound, pre-mandate, to apply *Kane I [Intervention]* in the other pending R.S. 2477 cases."[22] But it concluded that this was not "the egregious error necessary for [the court] to issue a writ of mandamus," and therefore denied the petition.[23]

The district court then proceeded to hold a nearly three-week trial and ordered post-trial briefing, all without SUWA's participation. Shortly after trial concluded, the mandate issued in *Kane I Intervention* following denial of en banc review. SUWA filed a renewed motion to intervene in *Kane II* (the motion underlying this appeal) on April 6, 2020, again asking that the district court implement

---

[21] *Id.*
[22] *Id.* at 130.
[23] *Id.* at 131.

*Kane I Intervention*, and alerting the court that the mandate had now issued.[24]

That motion languished for another *two years* before the district court addressed it. And when it finally did, it maintained its prior position—contrary to *Kane I Intervention*—that SUWA was not entitled to intervene as of right in *Kane II*.[25]

Specifically, as to whether SUWA's interests were adequately represented by the United States, the district court ignored this Court's conclusion in *Kane I Intervention* that "SUWA's and the United States' interest are not identical," instead concluding the opposite: that "SUWA's objectives and interests in this litigation are the same as the United States."[26]  Indeed, though this Court held

---

[24] *See id.* at 135-36.

[25] *Kane Cnty. (2) (3) (4) v. United States*, No. 1:12-CV-105, 2022 WL 1978748, at *2 (D. Utah June 6, 2022), *motion to certify appeal granted sub nom. Kane Cnty. (2) v. United States*, No. 2:10-CV-1073, 2022 WL 2669931 (D. Utah July 11, 2022). When this Court denied mandamus relief, it noted that the district judge had indicated he would abide by *Kane I Intervention* as the law of the circuit once the mandate issued. *See* App. 126. That ultimately did not happen.

[26] *Compare Kane I Intervention*, 928 F.3d at 895 ("SUWA's and the United States' interest are not identical") *with Kane Cnty.*, 2022

that the United States in these cases is tasked with "protecting" the broad "interest of the public," the district court disagreed and rejected that conclusion, instead ruling that "the United States is *not* litigating to protect the general public's rights."[27] And though this Court concluded that "the United States' objectives involve a much broader range of interests [than SUWA's]," the district court refused to abide by that holding.[28]

Moreover, while this Court found relevant the United States' interest in "the efficient administration of its own litigation resources," [29] the district court declined to consider that.[30] And ultimately, in denying SUWA's motion to intervene, the district court

---

WL 1978748, at *13, (SUWA and United States have the same objectives and interests).

[27] *Compare Kane I Intervention*, 928 F.3d at 894 ("when that property is public land, public interests are involved.") *with Kane Cnty.*, 2022 WL 1978748, at *13 ("the United States is not litigating to protect the general public's rights. It is litigating to protect its own exclusive title to property.").

[28] *Compare Kane I Intervention*, 928 F.3d at 894 ("the United States' objectives "involve a much broader range of interests") *with Kane Cnty.*, 2022 WL 1978748, at *12-13 (policy, economic, political, legal, and environmental factors "are [not] in play").

[29] *Kane I Intervention*, 928 F.3d at 895.

[30] *See generally Kane Cnty.*, 2022 WL 1978748.

14

judge, after conducting his own extra-record research on SUWA, made clear that he personally disagreed with SUWA's interests, describing them as "concerning," an "after-the-fact creation," and "show[ing] a troubling disregard for the property rights of others" (assuming at the outset, apparently, the very thing Plaintiffs must prove in this case—that they have any property rights whatsoever in these federal lands).[31]

After denying intervention as of right, the district court certified its order for interlocutory appeal, SUWA petitioned this Court, and the petition was granted. SUWA thereafter sought leave in the district court to file a motion to stay proceedings pending appeal (as for the past three years following *Kane I Intervention* SUWA has been almost entirely prohibited from filing anything in the case).

The district court denied leave to file a motion to stay.[32] It then went on to address and deny the hypothetical merits of the not-yet-filed motion to stay without hearing SUWA's arguments for why a

_____

[31] *Id.* at *15.
[32] App. 164.

stay is necessary (or the other parties' positions on such a stay motion).[33]

Having sought a stay with the district court, and the district court having denied that motion, SUWA now files this motion for a stay pending appeal.

## ARGUMENT

This Court should stay district court proceedings under Federal Rule of Appellate Procedure 8(a)(2) while it determines whether its *Kane I Intervention* decision is binding in this case. In determining whether a stay is appropriate, the Court addresses the same factors applicable to issuance of a preliminary injunction: (1) the likelihood of success on appeal; (2) the threat of irreparable harm absent a stay; (3) any harm to opposing parties if a stay is granted; and (4) any harm to the public interest.[34] As explained below, each factor counsels in favor of staying the proceedings below. [35]

---

[33] *Id.* at 165-167.

[34] *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001).

[35] The district court had subject matter jurisdiction under 28 U.S.C. §§ 2409a and 1331. This Court has jurisdiction under 28 U.S.C. § 1292(b). *See* App. 172.

## I.    SUWA is likely to succeed on interlocutory appeal.

In *Kane I Intervention*, this Court ruled that SUWA has an interest that may be impaired by this R.S. 2477 litigation, and that SUWA *may* not be adequately represented (at least as to scope) by the United States, which must consider a broad range of interests. This case involves the same claims, the same legal issues, the same parties, and the same county. Indeed, the only difference between this case and *Kane I Intervention* is that they involve different claimed routes.[36]

The district court nonetheless declined to apply *Kane I Intervention* in this case. The reason it gave in the introduction to its decision is that this case is "distinguishable" from *Kane I*.[37] But the court's actual analysis makes clear that it declined to apply *Kane I Intervention* not because of any material distinctions between these

---

[36] As explained below, the timing of this appeal is different in that scope *and* title of the fifteen Bellwether roads are at issue, whereas *Kane I Intervention* was decided when only scope remained at issue, and thus addressed only scope. But that has no bearing here because the district court denied intervention as to title *and* scope, and regardless, the *Kane I Intervention* decision applies with equal force to both issues.

[37] *Kane Cnty.*, 2022 WL 1978748, at *11.

related cases but rather because the district court simply disagrees with this Court's decision.

On standing, for example, the district court opined that "the majority's conclusion about SUWA's imminent injury is perplexing," and stated that it "disagree[d] that t[he] factors [that this Court relied on] are enough to establish Article III standing," though it ultimately reluctantly concluded that "SUWA has satisfied Article II standing."[38]

As to the first intervention prong—whether SUWA has an interest in R.S. 2477 litigation (a conclusion this Court has deemed "indisputable" for over fifteen years, including en banc[39]), and whether that interest may be impaired—the district court opined that this Court's "decoupling of Rule 24 from Rule 19 [was] problematic," and the district court expressed "concern[s] about the [*Kane I Intervention*] majority's conclusions about SUWA's interests," though it "nevertheless assume[d] that SUWA ha[d] satisfied Rule 24(a)'s 'interest' prong."[40]

---

[38] *Id.* at *9.

[39] *Kane I Intervention*, 928 F.3d at 891 (citation omitted).

[40] *Kane Cnty.*, 2022 WL 1978748, at *23.

18

On the final intervention prong—adequacy of interest—the district court again criticized this Court's *Kane I Intervention* analysis, but here it actually declined to follow it. This Court's adequacy decision rested on its conclusion that "the United States represents . . . broad-ranging and competing interests," including the interests of "stakeholders involved [who] may want wider roads," as well as the United States' own "internal interests, such as the efficient administration of its own litigation resources"—"interest[s] that SUWA certainly doesn't share."[41] Based on this premise, SUWA had met the "minimal" burden of "show[ing] that representation 'may be' inadequate."[42]

The district court rejected that premise and ruled to the contrary, announcing that "[t]he federal government is not always legally obligated to consider a broader spectrum of views," and that here, "[i]t is litigating to protect its own exclusive title to property."[43] Indeed, though this Court had already foreclosed the argument that

---

[41] *Kane I Intervention*, 928 F.3d at 895.
[42] *Id.* at 892–94.
[43] *Kane Cnty.*, 2022 WL 1978748, at *25–*26.

19

this is "merely a case about property rights," making clear it is instead a case involving "public interests,"[44] the district court rejected that holding, concluding instead that "the United States is not litigating to protect the general public's rights" but instead its own "property rights."[45] And though these conclusions led this Court to hold that "[t]he United States may not adequately represent SUWA's interest,"[46] the district court's rejection of those conclusions led it to hold that "SUWA's interests are adequately protected by [the United States."[47]

---

[44] *Kane I Intervention*, 928 F.3d at 894.

[45] *Kane Cnty.*, 2022 WL 1978748, at *26.

[46] *Kane I Intervention*, 928 F.3d at 892.

[47] *Kane Cnty.*, 2022 WL 1978748, at *27. The district court further concluded that because *Kane I Intervention* was decided under the Trump administration the subsequent change in presidential administration means SUWA's interest is now adequately represented. *Id.* at *27–*29. But this Court's reliance on the presidential administration was an *alternative* basis to grant intervention. The Court concluded that given the United States' obligation to represent "a much broader range of interests … SUWA's and the United States' interests are not identical," and "[t]herefore, no presumption of adequate representation applies." *Kane I Intervention*, 928 F.3d at 895. And the Court went on to conclude that "even if such a presumption were to apply, we would conclude that SUWA has rebutted it" in light of the "change in presidential administration." *Id.* But even if a change in presidential administration were a basis for the district court

In other words, it is not that *Kane I Intervention* is "distinguishable," but rather that the district court simply disagrees with *Kane I Intervention*. That, of course, is not a valid basis to uphold the district court's ruling. As such, SUWA is likely to prevail on interlocutory appeal.

In short, because this Court has already addressed essentially the exact question presented here, and because the district court has simply refused to accept and implement that decision, SUWA is likely to prevail on the merits.

## II.    SUWA will face irreparable harm absent a stay.

In the three years following this Court's holding that "SUWA is entitled to intervene as of right" in *Kane I*, the district court proceeded with the merits of this case (including trial) while effectively precluding SUWA from participating. Now, having finally addressed SUWA's motion to intervene, and having rejected both the motion

---

to distinguish *Kane I Intervention* (it is not), the fact that this suite of cases spans multiple presidential administrations, some of which "may not adequately represent SUWA's interests," *id.* at 892, shows that "the United States *may* not adequately represent its interests" throughout these cases, which is all SUWA must show to satisfy its "minimal" burden. *Id.* at 896.

and this Court's *Kane I Intervention* decision, the district court continues, notwithstanding interlocutory appeal, to push forward with closing out this case without SUWA's participation.

Its reason for doing so is its belief that everything can simply be re-done if necessary. When it declined to follow this Court's *Kane I Intervention* decision or adopt the agreement of all parties that SUWA should participate as of right in this case pending resolution of en banc proceedings, the court acknowledged that doing so could mean that "the trial would need to be redone."[48] And in denying SUWA's recent request for leave to file a motion explaining why the remainder of the case should be stayed (and concluding sua sponte that SUWA would suffer no irreparable harm), the court similarly reasoned that if SUWA again prevails, the court could simply "revisit[]" the case-dispositive rulings it plans to make during the pendency of this appeal.[49]

There can be no doubt that the district court's decision to remove SUWA from the case and proceed to trial in contravention of

_____

[48] App. 26-27.
[49] App. 171-72.

*Kane I Intervention* caused—and continues to cause—massive prejudice, prejudice that can be mitigated only by redoing various proceedings, perhaps including trial (as the district court predicted. But that prejudice need not be compounded by permitting the district court to close out this case while this Court is deciding if SUWA should be allowed to participate in defending it. Indeed, this Court has made clear that "[t]he sole purpose of . . . a stay is to preserve the status quo pending appeal so that the appellant may reap the benefit of a potentially meritorious appeal."[50] This is because absent a stay, this Court may "not [be] in a position to provide [SUWA] with the relief it is seeking."[51]

Put simply, the district court's upcoming review of the trial evidence, consideration of the parties' legal arguments, and analysis and resolution of the issues in this case will likely be done by the time this appeal concludes. If SUWA is permitted to intervene only after the fact, trying to further unscramble that process will irreparably prejudice SUWA.

---

[50] *Dominion Video*, 356 F.3d at 1267.
[51] *Id.*

23

### III.  Plaintiffs and the United States will not be harmed by a stay.

The other parties, by contrast, will not be harmed if district court proceedings are stayed pending appeal. In reasoning that they would, the district court stated that the case had already been delayed by the pandemic and complexity of the issues, that elderly witnesses were dying, and that the public needs clarity on who owns these roads—essentially that there has already been sufficient delay in this case.

The complexity of this case, however, is one of the reasons it should *not* proceed absent SUWA's participation in defending its interests. Moreover, the testimony of elderly witnesses about use of these routes before 1976 has largely already been preserved in preservation depositions, which have occurred (no additional preservation depositions are currently scheduled in this case).

Perhaps more importantly, the reason Plaintiffs and the United States will not be prejudiced by a stay is because they will be

saved the effort and expense of potentially needing to redo significant remaining portions of this case.[52] In explaining why its decision should be immediately appealed, the district court concluded that "the parties in this case face the possibility of needless duplication should the Circuit later rule that SUWA should have been allowed to intervene as of right," and that they "face having to re-do significant portions of the present litigation."[53] That basis for interlocutory appeal is eviscerated if the district court is permitted (and the other parties are required) to proceed with closing out the case while the appeal is pending.[54]

---

[52] *See Abbott Lab'ys v. Diamedix Corp.*, No. 94-1345, 1994 WL 782247, at *2 (Fed. Cir. 1994) (all parties and the trial court will be harmed if proceedings are not stayed).

[53] App. 166.

[54] The district court also suggested that the parties may be harmed by a stay because this is a bellwether case, and "[u]ntil this segment of the case is concluded, resolution of R.S. 2477 claims on other roads in Kane County has been halted." *Id.* at 172. That, however, is precisely the reason why a stay should issue: the resolution of this bellwether case has far-reaching implications, and if, as this Court has already held, SUWA has interests that may be impaired by this litigation that aren't adequately represented by existing parties, it should be able to participate in this pivotal proceeding.

## IV.    A stay is in the public interest.

As discussed above, and as the district court conceded, "the parties in this case face the possibility of needless duplication should the Circuit later rule that SUWA should have been allowed to intervene as of right."[55] The financial cost of that duplication, however, would be borne entirely by public taxpayers. And the public does not have an interest in wasting money on "needless duplication."[56]

The district court, in preemptively denying a stay, also argued that the public has an interest in closing out this litigation to "know whether a road is open or closed" and to ensure "safe travel of [the] roads."[57] But many of the "roads" in these cases, are overgrown paths through the wilderness or stream bottoms that are presently *closed* in the relevant federal land use plans (i.e. the public is prohibited from using them anyway, so safe travel is not an issue). And those routes that are open are maintained by the BLM or County. There is simply no evidence a Bellwether road in Kane County will become unsafe on account of a stay in these proceedings.

_____

[55] *Id.* at 167.

[56] *Id.*

[57] *Id.* at 173.

CONCLUSION

In the three years since this Court ruled SUWA was entitled to intervene as of right in R.S. 2477 cases, the district court has severely prejudiced SUWA by almost entirely removing it from this case and the vast majority of Utah's roads cases, first on its mistaken belief that it was not bound by *Kane I Intervention*, and later on the basis that it disagreed with that decision. And though the district court certified its decision for immediate appeal to avoid "having to re-do significant portions of the present litigation" if this Court "rule[s] that SUWA should have been allowed to intervene as of right," it is now going forward with those exact proceedings that will need to be redone if this Court reaffirms SUWA's right to intervene.

The district court should not be permitted to continue to compound the prejudice to SUWA in this critical bellwether case based on its belief that this Court's opinion was wrongly decided. SUWA requests that the Court stay proceedings in the district court pending the outcome of this interlocutory appeal.

The State of Utah and Kane County have indicated they oppose this Motion to Stay, and the United States takes no position on the

27

motion. To the extent it ameliorates the impact of any stay in the district court, SUWA is willing to brief the merits of the appeal on an expedited basis if necessary.

September 28, 2022                  /s/ Michelle White

_____

**SOUTHERN UTAH WILDERNESS ALLIANCE**
Stephen H.M. Bloch (#7813)
Michelle White (#16985)
425 East 100 South
Salt Lake City, UT 84111
Telephone: (801) 486-3161
Facsimile: (801) 486-4233

**MANNING CURTIS BRADSHAW & BEDNAR PLLC**
Trevor J. Lee (#16703)
Mitch M. Longson (#15661)
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
Telephone: (801) 363-5678
Facsimile: (801) 364-5678

*Attorneys for Intervenor-Defendants Southern Utah Wilderness Alliance, The Wilderness Society, Grand Canyon Trust, and Sierra Club.*

**COOLEY LLP**
John C. Dwyer
Tijana Brien (*Pro Hac Vice*)
3175 Hanover St.
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

*Attorneys for Intervenor-Defendants Southern Utah Wilderness Alliance, The Wilderness Society, and Grand Canyon Trust.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations in Fed. R. App. P. 5(c) and 32(c)(2) because it contains 5,200 words, excluding the parts exempted by Fed. R. App. P. 27(d)(2).

The brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5), Fed. R. App. P. 32(a)(6) and 10th Cir. R. 32 because the brief was prepared in a proportionally spaced typeface using Century Schoolbook 14-point font.

September 28, 2022

 /s/ Michelle White
Michelle White
*Attorney for Southern Utah Wilderness Alliance*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

- All required privacy redactions have been made per CTA10 Rule 25.5.
- If required to file additional hard copies, that the ECF submission is an exact copy of those documents.
- The digital submissions have been scanned for viruses with Webroot SecureAnywhere Version 9.0.28.48 on September 28, 2022, and this submission is free of viruses.

September 28, 2022

/s/ Michelle White
Michelle White
*Attorney for Southern Utah Wilderness Alliance*

31

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief with the Clerk of Court for the Tenth Circuit Court of Appeals using the appellate CM/ECF system on September 28, 2022. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

September 28, 2022

/s/ Michelle White

Michelle White
*Attorney for Southern Utah Wilderness Alliance*